UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNA WOLF,

    Plaintiff,  Case No. 23-cv-

-vs-

AMERILODGE GROUP LLC  Hon.
a Limited Liability Corporation,

    Defendant.

---

Jennifer Lossia McManus (P65976)
Ryan O. Rosenberg (P84530)
FAGAN MCMANUS, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com
rrosenberg@faganlawpc.com

---

**COMPLAINT AND JURY DEMAND**

There is no other pending or resolved civil action
arising out the transaction or occurrence
alleged in the Complaint.

NOW COMES Plaintiff, JENNA WOLF, by and through her attorneys, FAGAN MCMANUS, P.C., and for her cause of action against Defendant, states as follows:

1

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff, Jenna Wolf (hereinafter referred to as "Wolf" or "Plaintiff"), is an individual residing in the City of Ypsilanti, County of Washtenaw, State of Michigan.

2. Defendant, Amerilodge Group LLC (hereinafter referred to as "Amerilodge" or "Defendant"), is a Michigan Limited Liability Company with its headquarters located in the City of Bloomfield Hills, County of Oakland, State of Michigan.

3. At all times pertinent hereto, Wolf was employed by Amerilodge at its Holiday Inn Hotel (hereinafter referred to as "the Hotel") located in the City of Ann Arbor, County of Washtenaw, State of Michigan.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental).

## GENERAL ALLEGATIONS

5. On April 18, 2022, Wolf began her employment with Amerilodge.

6. Wolf was hired as the General Manager of the Hotel.

7. When Wolf began her employment, the guest services scores at the Hotel were in flux as the Hotel had undergone other leadership changes.

8. From previous experience as a General Manager, Wolf knew that she needed approximately one year to turn around a poor performing hotel.

9. For the first several months of her employment, Wolf reported to Mark Kuykendall ("Kuykendall"), then-Regional Director of Operations of Amerilodge.

10. Wolf asked Kuykendall when her benefits, including maternity leave, kicked in, and Kuykendall assured her that "everything" would apply when she worked at Amerilodge for six months.

11. On July 19, 2022, Kuykendall completed an "Initial Employment Period Review" for Wolf.

12. In the review, Wolf was rated satisfactory for almost all of the competencies, with the exception of a few "work in progress" ratings.

13. Kuykendall attached a document titled "Supervisor Comments" to the review, which detailed Wolf's accomplishments, progress, and explained that Wolf worked very well with all department managers and staff.

14. Kuykendall's comments stated that Wolf "has made significant progress assessing the hotel staff and building a new team." And, "[t]he front desk has experienced necessary line staff turnover and leadership changes, resulting in guest services challenges."

15. Kuykendall's comments also stated that, "The recent approval of the restructure of the leadership team, which officially starts on August 1, will make it possible to provide broader management coverage and better

service levels. Jenna recognized the strength of the two long-term leadership team members who will split up the major operations tasks…"

16. In September 2022, Wolf informed Kuykendall that she was pregnant.

17. In September 2022, Wolf asked Kuykendall about maternity leave benefits, and he told her to reach out to Human Resources.

18. In October 2022, Wolf began reporting to a new Regional Director of Operations, Guy Beaulieu ("Beaulieu").

19. In October 2022, Wolf disclosed to Beaulieu and the Vice President of Human Resources, Sarah Atkins ("Atkins"), that she was pregnant, and asked again about maternity leave benefits.

20. When Wolf asked for maternity leave information, Beaulieu acted as though it was an inconvenience for him to ask for information from the Amerilodge corporate office, and Atkins failed to provide Wolf with any information at that time.

21. In early October 2022, Wolf called Amerilodge's corporate office and asked about maternity leave benefits. On the call, Wolf was told there was form she needed to fill out. However, Amerilodge's corporate did not send the form after the call.

22. On October 12, 2022, the Hotel received a "30 day GSS Boost

Action Plan" from the Hotel's corporate franchise company, InterContinental Hotel Group ("IHG"), calling for improvement to the Hotel by December 30, 2022, naming several management employees aside from the General Manager as being responsible for improvement on tasks.

23. On October 31, 2022, Wolf texted the Vice President of Amerilodge, Jim Oberliesen ("Oberliesen"), asking for information regarding maternity leave, stating that she had previously asked Kuykendall about it, and that he had told her that it would be a benefit to her after six months, similar to the paid time off benefits.

24. Oberliesen did not reply to Wolf's text.

25. In November 2022, Wolf sent an email to Beaulieu asking to file a formal complaint of hostile work environment due to her pregnancy.

26. Beaulieu called Wolf, told her not to file her complaint and told her that he would handle it.

27. Upon information and belief, Beaulieu did nothing to investigate Wolf's complaint, gather specific information, or escalate her complaint to Amerilodge's Human Resources.

28. On November 21, 2022, Wolf participated in a video conference with Atkins and Beaulieu, where Atkins said that Wolf would be eligible to take a medical leave of absence after six months of employment (she would

have been eligible on October 18, 2022) for the birth of her child, and Atkins also informed Wolf that she would be eligible for Family Medical Leave Act ("FMLA") benefits after twelve months of service (she would have been eligible on April 18, 2023).

29. Following the November 21 video conference, Atkins emailed Amerilodge's form for maternity leave to Wolf.

30. On November 30, 2022, Wolf emailed a doctor's note to Beaulieu and Amerilodge's Assistant General Manager Avram Liebowitz ("Liebowitz"), which stated that Wolf was unable to work on November 30, 2022 due to exacerbation of a pregnancy related pain issue, and requested that Amerilodge consider limiting the strenuous demands of Wolf's work schedule to allow for adequate rest and breaks.

31. Beaulieu forwarded Wolf's doctor's note to Atkins.

32. On November 30, 2022, Atkins emailed Wolf, "You are a seasoned GM and know the responsibilities. Are you asking for a pregnancy accommodation? If so, what functions of your job can you not perform and do you have a proposed accommodation you would like us to consider? Or, can you perform all the tasks of the GM?"

33. On November 30, 2022, Wolf responded to Atkins, stating that she should not be lifting heavy items anymore, she should have time to sit

6

down, and she should not overexert herself. Wolf also said her doctor was willing to put more details in the letter if Atkins preferred.

34. On December 1, 2022, Wolf visited the Amerilodge corporate office of Amerilodge to collect giveaways that IHG bought for the Hotel.

35. While at the corporate office, Wolf had to lift heavy items, the giveaways, without assistance.

36. In the December 2, 2022, Atkins emailed Wolf, attaching the General Manager job description to Wolf, and asking Wolf to review it with her doctor and provide more specific job restrictions.

37. On December 7, 2022, Beaulieu issued a performance letter to Wolf, claiming it was her final written warning, alleging that her performance fell below acceptable standards and that she willfully disregarded essential functions of her position.

38. Wolf disagreed with allegations in the December 7 letter about her performance, nor had she ever been issued a written warning for her performance prior to December 7.

39. First, the December 7 letter stated that Wolf was unresponsive to Amerilodge's CEO's requests for information, but when Wolf asked Beaulieu about this allegation, he provided no evidence to support that she had been unresponsive to the CEO.

40. Second, the December 7 letter stated that the Hotel received 23 guest complaints. However, one guest submitted 15 complaints asking for a refund, which unfairly inflated this number to appear out of the ordinary.

41. Third, the December 7 letter included certain goals that had a due date of December 31, 2022, such as hiring a new supervisor and executive housekeeper and being up to date on IHG corporate trainings by that date.

42. Wolf did subsequently hire for the employee positions stated in December 7 letter, however, Beaulieu failed to instruct Wolf on how to complete the IHG corporate trainings.

43. Fourth, aside from the December 31, 2022 due date for specific tasks in the December 7 letter, the December 7 letter also contained vague requirements such as, "culture must improve immediately at the property," and "service scores must improve," which were not quick fixes.

44. Wolf could not dramatically increase service scores within less than a month, as prospective job applicants turned down offers due to low starting wages at the Hotel. Wolf tried to get approval for wage increases from Beaulieu and Atkins, but only a small increase was approved.

45. During this time, Wolf cleared out years of unclaimed deposits on reservations at the Hotel, helping the Hotel get out of roughly $80,000 of

debt.

46. On December 13, 2022, Atkins emailed Wolf, asking if she was able to get her restrictions outlined by her doctor.

47. On December 28, 2022, Wolf replied to Akins, stating she had a doctor's appointment scheduled for Friday, December 30, 2022, and that she would have her doctor go through the job description, and that she would get back to Atkins.

48. On December 29, 2022, Amerilodge called Wolf to the Amerilodge boardroom, where Beaulieu and Kuykendall were also present. There, Amerilodge terminated Wolf's employment.

49. During the December 29 meeting, Beaulieu downplayed the seriousness of the termination and was laughing during the meeting.

50. Amerilodge's Employee Exit Form for Wolf stated that the reason for termination was "gross misconduct—failing to perform job duties as assigned," which was signed by Beaulieu.

51. Amerilodge's Employee Exit Form for Wolf also stated that Wolf failed the "IHG QA," a corporate audit by IHG of the Hotel on December 15, 2022.

52. Upon information and belief, Wolf did not fail the audit. In fact, the Hotel received 100% "pass" scores in two of the four total assessment

9

categories. "Brand Standards Important" was rated 74.07% percent, and "Cleanliness" was rated 82.47%. The average of these scores was 89.135%, which is an overall passing score by IHG's audit standards.

53. Upon information and belief, there were several other General Managers, including one for Amerilodge's Grand Blanc Hotel, who failed their QAA audit, but were not terminated.

54. On or about January 26, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation pursuant to the Americans with Disabilities Act of 1990, as amended ("ADA"), and gender discrimination, a hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("Title VII").

55. Plaintiff intends to amend this Complaint in order to pursue claims under the ADA and Title VII after the EEOC issues the Notice of Right to Sue pertaining to those claims.

56. Wolf gave birth on April 13, 2023.

57. As of April 18, 2023, if Amerilodge had not terminated Wolf, Wolf would have been eligible for maternity leave benefits pursuant to the Family Medical Leave Act ("FMLA").

## COUNT I
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

58. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

59. Defendant is an employer within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*, as it employes greater than 50 employees within a 75-mile radius of Plaintiff's worksite.

60. The FMLA requires that an employee give notice of their need for FMLA leave.

61. An employee's request for or inquiry about FMLA leave is protected activity under the FMLA.

62. The FMLA prohibits an employer from interfering with, restraining, or denying the exercise of or the attempt to exercise FMLA rights. § 2615(a)(1).

63. The FMLA prohibits retaliation against an employee who engages in protected activity pursuant to the FMLA. § 2615(a)(1).

64. The FMLA also prohibits retaliation against an employee who opposes any practice made unlawful by the FMLA. § 2615(a)(2).

65. Plaintiff exercised a right under the FMLA when she informed Defendant about her pregnancy and repeatedly asked about her maternity leave opportunities and rights pursuant to the FMLA.

66. Defendant failed to promptly provide Plaintiff with the requested information about her maternity leave opportunities, despite knowing she was pregnant.

67. Plaintiff attempted to oppose Defendant's unlawful practices under the FMLA by making a formal complaint, which Defendant prevented her from doing.

68. Plaintiff suffered an adverse employment action when she was terminated from her employment on December 29, 2022.

69. There is a causal connection between Plaintiff's repeated asks about pregnancy-related maternity leave under the FMLA, and her termination on December 29, 2022.

70. Defendant violated the FMLA by:

   a) Interfering with Plaintiff's FMLA rights;

   b) Retaliating against Plaintiff for engaging in protected conduct under the FMLA;

   c) Retaliating against Plaintiff for opposing a practice that was unlawful under the FMLA;

   d) Terminating Plaintiff's employment;

   e) Other violations of the FMLA which are to be determined through discovery.

71. Defendant willfully violated the FMLA in that it knew that such conduct was prohibited under the statute or acted in reckless disregard of

whether such conduct was prohibited.

72. As a direct and proximate result of Defendant's FMLA violations, Plaintiff has suffered, and in the future will suffer damages including, but not limited to, lost wages, employment benefits, and other compensation, past and future.

73. Pursuant to the FMLA, Plaintiff is entitled to:

   a) All wages, salary, employment benefits, or other compensation denied or lost by reason of the violation of the FMLA;

   b) Interest;

   c) Liquidated damages;

   d) Attorney fees;

   e) Other damages/remedies available under the law;

   f) Appropriate equitable relief.

WHEREFORE, Plaintiff prays for judgment against Defendant, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Plaintiff also seeks equitable relief; including back-pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT II
## VIOLATION OF THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

74. Plaintiff incorporates the above paragraphs as if specifically

repeated herein.

75. At all times relevant hereto, Plaintiff was an "employee" and Defendant was an "employer" under the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. L. § 37.1101 *et seq.*

76. At all times relevant hereto, Plaintiff had a disability, was regarded by Defendant as suffering from a disability, and/or had a history of a disability under the PWDCRA.

77. Defendant had a duty under the PWDCRA not to discharge or otherwise discriminate or retaliate against Plaintiff in her employment on the basis of her disability, perceived disability, and/or history of disability, and her request for accommodations.

78. Defendant violated Plaintiff's rights under the PWDCRA by:

   a) Discriminating against Plaintiff due to her disability;

   b) Failing to accommodate Plaintiff's restrictions in her November 30, 2022 doctors note and subsequent communications about her restrictions;

   c) Failing to engage in an interactive process regarding Plaintiff's request for reasonable accommodations;

   d) Terminating Plaintiff's employment;

   e) Retaliating against Plaintiff for requesting reasonable accommodations;

   f) Other acts of disability discrimination and/or retaliation to

be determined through discovery.

79. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

    a) Loss of wages and other compensation, both in the past and in the future;

    b) Loss of the value of benefits, both in the past and in the future;

    c) Loss of earning capacity;

    d) Loss of promotional opportunities;

    e) Extreme embarrassment, humiliation, emotional distress, mental anguish, disappointment, outrage and indignity;

    f) Exemplary damages;

    g) Attorney fees;

    h) Other injuries and damages that become known throughout the discovery process.

WHEREFORE, Plaintiff prays for Judgment against Defendant, in whatever amount the Court of Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, past and future, together with interest, costs, an award of attorney fees. Plaintiff is also seeking equitable relief, including back-pay, front-pay, or other equitable relief the Court or Jury deems appropriate.

## COUNT III
## VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT

80. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

81. Employers are prohibited from violating the Elliott-Larsen Civil Rights Act, as amended (hereinafter referred to as the "ELCRA"), Mich. Comp. L. § 37.2101.

82. The ELCRA prohibits, among other things, discrimination and retaliation on the basis of sex.

83. Sex discrimination includes discrimination based upon pregnancy.

84. At all times relevant hereto, Defendant was an "employer" within the meaning of the ELCRA pursuant to §201(a).

85. Defendant violated Plaintiff's rights under the ELCRA by:

   a) Discriminating against Plaintiff based upon her pregnancy;

   b) Preventing Plaintiff from filing a complaint about hostile work environment based on pregnancy;

   c) Failing to accommodate Plaintiff's pregnancy-related restrictions in her November 30, 2022 doctor's note and subsequent communications about her restrictions;

   d) Terminating Plaintiff's employment;

  e) Retaliating against Plaintiff for her requests for information regarding maternity leave;

  f) Retaliating against Plaintiff for requesting reasonable accommodations due to her pregnancy;

  g) Other acts of pregnancy discrimination and/or retaliation to be determined through discovery.

86. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered and in the future will suffer damages including, but not limited to:

  a) Loss of wages and other forms of compensation including commissions and company stock, both in the past and in the future;

  b) Loss of the value of benefits, both in the past and in the future;

  c) Loss of promotional opportunities;

  d) Loss of earning capacity;

  e) Extreme embarrassment, humiliation, mental anguish, disappointment, outrage and indignity;

  f) Exemplary damages;

  g) Other damages to be determined.

WHEREFORE, Plaintiff prays for Judgment against Defendant, in whatever amount the Court of Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, past and future, together with interest, costs, an award of attorney fees. Plaintiff is also

seeking equitable relief, including back-pay, front-pay, or other equitable relief the Court or Jury deems appropriate.

Fagan McManus, P.C.

By: /s/ *Ryan O. Rosenberg*
   Ryan O. Rosenberg (P84530)
   Attorney for Plaintiff
   25892 Woodward Avenue
   Royal Oak, MI  48067-0910
   (248) 542-6300
   rrosenberg@faganlawpc.com

Dated:  June 20, 2023

### **PLAINTIFF'S DEMAND FOR JURY TRIAL**

NOW COMES the above-named Plaintiff, by and through her attorneys, Fagan McManus, P.C., and hereby demands trial by jury on the above matter.

Fagan McManus, P.C.

By: /s/ *Ryan O. Rosenberg*
   Ryan O. Rosenberg (P84530)
   Attorney for Plaintiff
   25892 Woodward Avenue
   Royal Oak, MI  48067-0910
   (248) 542-6300
   rrorsenberg@faganlawpc.como

Dated:  June 20, 2023